(132 So. 721)

**CENTRAL LUMBER CO. v. JACKS et al.**

**6 Div. 735, 735–A.**

Supreme Court of Alabama.

Jan. 15, 1931.

Rehearing Denied March 19, 1931.

J. A. Estes, of Bessemer, for appellant.

Smyer, Smyer & Bainbridge, of Birmingham, for appellees.

**THOMAS, J.**

The action is to enforce a materialman's lien upon certain property now owned by the appellee Tom Jacks. The other appellees sold the property to Jacks, who executed to them three purchase-money mortgages to secure the purchase price. The lands consisted of approximately one hundred and fifty-six acres located about five miles from Birmingham. The executors of the Mims estate sold a portion of the acreage to Jacks, W. J. Mims sold him a portion, and Walter Mims sold him the balance; the three tracts adjoining each other. Three deeds were executed by the vendors, and, as we have stated, three separate purchase-money mortgages were executed by Jacks to secure the balance of the purchase price. These mortgages were duly filed for record in the probate office of Jefferson county, Ala., prior to the time he erected the specific improvements upon the land and for which material was furnished and liens therefor now sought to be established.

After the purchase-money mortgages were recorded, the grantee erected a dairy barn near the center of the one hundred and fifty-six acres. And in that improvement purchased certain material from the complainant which was used in the erection of the barn, and he failed to pay for the same. The barn and an acre of land surrounding it are located partly on the tract sold to Jacks by W. J. Mims, and partly upon the tract sold by the executors of the Mims estate to Jacks. The property is located only about five miles from the court house in Birmingham, is residential or subdivision property, and for such purpose rather than valuable for farming or dairying. A question argued is whether its value was increased by the building of a dairy barn thereon, or whether such a structure decreased the value of the land upon which located, and impaired the value of the adjoining land. Portions of the barn and improvements could be removed from the land; that is, the portions not constructed of cement and so affixed to the land.

The bill of complaint as last amended and it is the insistence of counsel for appellant that: (1) Complainant desires to enforce its lien upon the dairy barn and also the land upon which it is situated and one acre adjoining thereto, and to have its lien on both the barn and the acre held to be prior and superior to the purchase money mortgages; (2) complainant desires that the acre of land and the land upon which the barn is situated be released and discharged from the lien of the superior purchase-money mortgages and it be given a first and prior lien upon this land and the barn, or that the acre and the land upon which the barn is situated be separated from the other land included in the mortgages, and the proportionate part of the purchase-money debt be ascertained and charged thereto, and that this portion of the land be sold for the satisfaction of the lien of complainant and such proportionate part of the purchase money mortgage debt. The appellees (except Tom Jacks) denied the existence of the lien claimed by appellant and relied upon their prior and superior purchase money mortgages on the land.

A decree pro confesso was taken against Tom Jacks, the grantee in the deeds and grantor in the several mortgages, and a personal judgment for the amount of the debt was rendered against him. The trial court gave the appellant a prior and superior lien upon the barn and improvement with the right to sell and remove the same, and held that the purchase-money mortgages owned by the other appellees were prior and superior liens on the land. There was a cross-assignment of errors by all of the appellees, except Tom Jacks. This cross-assignment of errors raises the question of whether, as against these appellees, the complainant proved that it complied with the statutes relating to the filing of the lien statement?

The amended bill and its exhibits will be considered with the original bill and in aid thereof. Grimsley v. First Ave. Coal & Lbr. Co., 217 Ala. 159, 161, 115 So. 90, and authorities; Richardson Lumber Co. v. Howell, 219 Ala. 328, 122 So. 343. The claim for lien filed in the probate office and attached as an exhibit to the bill as amended was sufficient under the statute. Richardson Lbr. Co. v. Howell, supra; Ingram v. Howard, 221 Ala. 328, 128 So. 893; section 8832 et seq., Code. There is no merit in the cross-assignment of errors by appellees.

A mortgagor in possession of land is the owner or proprietor in a sense that he may contract for improvements that may be enforced in equity according to the respective superior rights of the several parties. and as not to impair the obligation of the mortgage contract. Becker Roofing Co. v. Wysinger, 220 Ala. 276, 124 So. 858; Ingram v. Howard, supra. See, also, Sorsby v. Woodlawn Lumber Co., 202 Ala. 566, 81 So. 68; Sturdavant v. First Ave. Coal & Lumber Co., 219 Ala. 303, 122 So. 178.

It is now established by this court that a duly recorded prior mortgage on land

is superior, as to the land, to a materialman's lien for lumber and material subsequently furnished at the instance of the mortgagor, and used in the erection of improvements on the land subsequent to execution and recordation of said prior mortgage. That, an independent building erected on mortgaged land may be subject to the prior lien on the building and the right of sale and removal for the satisfaction of such building or materialman's lien, has been recognized and may be enforced and not impair the prior mortgage contract. Becker Roofing Co. v. Wysinger, supra; Pilcher v. E. R. Porter Co., 208 Ala. 205, 94 So. 72.

The building or improvements placed upon the land by Jacks—the mortgagor and owner—did not become a part of the land so far as the appellant is concerned, and in decreeing that it had a prior lien on the improvement and ordering the same sold and removed, the trial court gave to the appellant all the protection it was entitled to under the law and recent decisions. Pilcher v. E. R. Porter Co., supra. The case of Becker Roofing Co. v. Wysinger, 220 Ala. 276, 124 So. 858, sustains the decree of the court below in the case at bar.

■ A further attempt is made by appellant to force appellees to pay the debt, though, under much of the testimony, the placing of the barn on the land did not increase the value thereof; and this effort is asserted under the rule of marshaling of assets. It will be noted that W. J. Mims owned one tract of land and sold it to Jacks and took a purchase money mortgage therefor; his one tract of land was the only security he had for the debt; and an adjoining tract of land was sold by the executors of Mims to Jacks, and this tract was the only security the executors received from him. Conceding that the doctrine of marshaling assets did apply in a proper lien suit of this character, the following quotations from the general authorities would tend to disclose that it is not applicable in the case at bar. The Oregon court held that:

"There can be no marshaling of assets unless there are at least two separate and two distinct funds or properties as security for the debts. Thus, a building moved on and permanently affixed to the soil of mining property becomes a part of the realty and therefore cannot be considered one separate and distinct fund or security and the land another, so that the doctrine of marshaling would apply." 18 Ruling Case Law, Marshaling Assets, § 5, p. 458.

And in Henderson v. Steiner-Lobman Dry Goods Co., 202 Ala. 325, 80 So. 407, this court has declared:

"It is true, in general, that before the doctrine of marshaling assets will be applied, there must be two funds or properties. This follows upon a statement of the doctrine which may be found in many of our cases and need not be repeated. Gusdorf v. Ikelheimer, 75 Ala. 148."

■ The mortgagees had the right of foreclosure on default, and were not required to take any steps or forego any contract right to protect the interest of complainant-lienholder.

The following quotations from the decisions of this court are conclusive on this proposition. Mr. Chief Justice Stone, in Turner v. Flinn et al., 67 Ala. 529, declared as to this:

"But it is sought to maintain the present bill, as a suit to have the securities marshalled between the different lien creditors. Hardie & Co. held the elder mortgage, and the debt, to secure which it was given, was past due when the mortgage was made to Mrs. Turner. Each mortgage, to some extent, conveyed the same property, *while each conveyed property not embraced in the other.* The cotton crop, probably the most valuable of all the chattels conveyed, was mortgaged to Hardie & Co., but not to Mrs. Turner. The mortgagors were insolvent, and the entire property conveyed by the two mortgages was insufficient to pay both debts. In this state of the case there can be no doubt that Mrs. Turner, if she moved in time, had the right to have Hardie first exhaust the fund on which he alone held a lien, so as to leave for Mrs. Turner a larger *residuum* of the property upon which each of them held a lien. Story Eq. Ju. § 633. But this is an equitable doctrine—the creature of equity—called into exercise by, and for the benefit of the creditor who is to be profited by it. The fully secured creditor has no interest in the question, and is not required, of his own motion, to take any step to advance the interest of the junior incumbrancer." (Italics supplied.)

And recently this court declared through Mr. Justice Gardner, in Vines v. Wilcutt, 212 Ala. 150, 154, 102 So. 29, 32, 35 A. L. R. 1301:

"Conceding, therefore, that the junior incumbrancer could have enforced his equities and required a marshaling of assets prior to the foreclosure, yet standing by and permitting the foreclosure to proceed to its full completion, he has lost his rights by a failure to assert them."

It necessarily follows that the doctrine of marshaling assets is not applicable after foreclosure to the facts in the case at bar—the several Mims mortgages had been duly foreclosed and the Mimses and Smiths became the purchasers at such sales before the institution of this suit.

■ It may be further said of the effort of appellant to have the acre of land sur-

rounding the barn sold for the satisfaction of its lien, that it is an attempt to force these appellees to pay the debt incurred by Jacks. This acre is situated in the center of a tract, and, should it be sold, appellees would of necessity be required to purchase the barn and this acre of land to protect their other properties. That is to say, the sale of the one acre and the barn to a third person would depreciate the value of the entire tracts, and in order to protect said properties, appellees would be forced to buy the acre and barn and pay the debt owing by Jacks to the appellant, even though the improvements did not increase the value of the land. And for this reason the only right of appellant was to have the improvements sold and removed from the land without impairing the prior and superior purchase-money mortgages. The barn as so located added nothing to the value of the land in its surroundings, and to sell the acre in question for the satisfaction of appellant's claim against Jacks—the purchaser and mortgagor—would amount to a taking of money from the appellees for the payment of another man's debt and in disregard of their superior rights. However, the question of increased value is not presented in a case where an independent building is erected on land subject to a mortgage; and this question only arises when repairs are made to such a building already located on land subject to a prior mortgage, as was the fact in Becker Roofing Co. v. Wysinger and Pilcher v. E. R. Porter Co., supra.

The barn and improvements can be removed from the lands without affecting the prior mortgages. It is true that the lumber will not be as valuable after it is removed, and that the superstructure of cement cannot be removed; but appellant knew that this situation might develop and that its only right was to have the building sold and removed in its effort to enforce payment.

The decree of the trial court is a correct application of the statute and constructions thereof by this court, and it is affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.